IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT J. ESQUIVEL, | § § § | |
| *Plaintiff,* | § § | SA-20-CV-00377-OLG |
| vs. | § § § | |
| LOGAN EASTBURN, DPS, TROOPER #14720; RYAN BIBBY, DPS, TROOPER #14593; NICHOLAS WINGATE, DPS, TROOPER #13157; AND TEXAS HIGHWAY PATROL DEPARTMENT OF PUBLIC SAFETY, | § § § § § § § § | |
| *Defendants.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendants' Motion for Summary Judgment [#60]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#13]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendants' motion be **granted**.

**I. Background**

Plaintiff, proceeding *pro se*, filed this action against the San Antonio Police Department ("SAPD"), the Texas Highway Patrol Department of Public Safety ("DPS"), and various officers of these departments (SAPD Officer David Kendrick and DPS Troopers Eastburn, Bibby, and Windgate), alleging that he was subjected to an unlawful arrest and illegal search and seizure on April 29, 2018, following a purported traffic stop. Plaintiff's Original Complaint [#4] advances

1

various constitutional claims under 42 U.S.C. § 1983 related to his rights to free speech, due process, and equal protection, and the right to be free from excessive force, unlawful search and seizure, and cruel and unusual punishment. Plaintiff complains of being wrongfully detained for ten months in the Bexar County Jail on a charge of evading arrest, which was ultimately dismissed on March 18, 2019. After reviewing Plaintiff's Complaint, the Court ordered Plaintiff to file a More Definite Statement prior to permitting service of his Complaint on any Defendant. Plaintiff's More Definite Statement [#7] references additional claims of defamation, slander, and intentional infliction of emotional distress.

The Court concluded that Plaintiff had pleaded at least one non-frivolous claim and permitted service of his Complaint. Plaintiff subsequently filed an Amended Complaint [#10], adding allegations related to the practice of strip searching inmates at the Bexar County Detention Center without cause and referencing class actions challenging such practices on constitutional grounds.

Defendants David Kendrick and SAPD subsequently filed a motion to dismiss, and the Court granted the motion on October 7, 2020, dismissing all of Plaintiff's claims against these Defendants. There were issues related to service of the other four Defendants—DPS and Troopers Eastburn, Bibby, and Windgate (hereinafter "the Trooper Defendants"). After service was finally effectuated, these Defendants filed motions to dismiss, which the Court granted in part, dismissing Plaintiff's Section 1983 claims against DPS and Section 1983 claims against the Trooper Defendants in their official capacities. As to the Trooper Defendants in their individual capacities, the Court dismissed Plaintiff's Section 1983 claims of false arrest and malicious prosecution.

The following claims remain pending: (1) Plaintiff's Fourth Amendment excessive force and unlawful search and seizure claims against the Trooper Defendants in their individual capacity; (2) Plaintiff's due process claims against the Trooper Defendants in their individual capacity; (3) Plaintiff's Eighth Amendment claims (which, because Plaintiff was a pretrial detainee, should be construed under the Fourteenth Amendment) against the Trooper Defendants in their individual capacity; (4) Plaintiff's First Amendment claim against the Trooper Defendants in their individual capacity; (5) Plaintiff's tort claims of malicious prosecution, intentional infliction of emotional distress, and defamation and slander against DPS and the Trooper Defendants. DPS and the Trooper Defendants now move for summary judgment on all remaining claims.

## II.  Legal Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The Fifth Circuit has held that a plaintiff's *pro se* status does not relieve her of the duty to properly support a response to motions for summary judgment. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). The Rules of Civil Procedure and this Court's Local Rules are sufficient to apprise a *pro se* plaintiff of the potential consequences of failing to submit competent summary judgment proof, such as opposing declarations or affidavits; no additional notice is required. *Id.*

Plaintiff has not filed a response in opposition to Defendants' motion for summary judgment, and his deadline to do so has expired. *See* W.D. Tex. Loc. R. CV-7(d) (responses to motions other than case management and discovery motions due within 14 days of the motion's filing). However, Plaintiff did file a document within the 14-day response period [#62], which

he states is a response to the undersigned's order denying Plaintiff's motion to compel discovery [#59].  This document expresses Plaintiff's disagreement with that order and the undersigned's general handling of this case, questions the undersigned's authority to preside over this case as a United States Magistrate Judge,[1] demands the removal of the undersigned from her office, and requests the appointment of counsel due to his inability to understand the proceedings and effectively prosecute his case and questions about his mental competency.  To the extent this filing may be construed as an appeal of the denial of Plaintiff's motion to compel, the District Court may consider the appeal alongside this report and recommendation.

As Plaintiff has not filed a response in opposition to the motion for summary judgment and has not submitted any opposing declarations or affidavits or any other evidence, the summary judgment record recited herein consists solely of the evidence proffered by Defendants.  Pursuant to this Court's Local Rules, if there is no response filed within the time period prescribed by the rules, the court may grant the motion as unopposed.  W.D. Tex. Loc. R. CV-7(d).  However, because Defendants' motion is a dispositive motion, the undersigned will nevertheless evaluate the motion on its merits.

---

[1] The undersigned has authority to issue orders on all motions that do not involve a decision on the merits of any claim of Plaintiff or defense of Defendants pursuant to 28 U.S.C. § 636(b)(1)(A).  The parties' unanimous consent to the jurisdiction of a United States Magistrate Judge is required for the undersigned to issue orders and make decisions on any motion involving a decision on the merits of a claim or defense in this case or to preside over a trial.  *See id.* at §§ 636(b)(1)(B), (c).  Because the parties have not consented to the jurisdiction of a United States Magistrate Judge in this case, the undersigned is not "presiding" and only has authority to make a recommendation to the District Judge as to Defendants' motion for summary judgment and the ultimate merits of Plaintiffs' claims.  Plaintiff may object to this recommendation as set forth at the end of this Order, and the District Judge, here Chief United States District Judge Orlando L. Garcia, will consider those objections before making a final decision in this case.

### III.  Summary Judgment Record

The summary judgment record establishes that on April 28, 2018, at approximately 12:31 a.m., DPS Troopers Logan Eastburn and Nicholas Wingate were on patrol in San Antonio as part of the Violent Crimes Task Force, when they overheard radio traffic of a San Antonio Police Unit in pursuit of a vehicle.  (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.)  The vehicle was traveling at a low speed of 20 mph, and DPS's helicopter had the vehicle in sight from overhead.  (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2; DPS Incident Report [#60-4], at 3.)

The vehicle pulled into a gas station on Interstate 10, and Trooper Wingate pulled in behind the vehicle and activated the emergency warning lights in anticipation of conducting a traffic stop.  (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.)  The vehicle ignored the emergency lights and verbal commands of the DPS Troopers.  (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.)  Trooper Eastburn then notified dispatch that the Troopers were in pursuit of the vehicle.  (*Id.*)  When the vehicle came to another stop at a red light, the Troopers initiated another traffic stop and began giving verbal commands.  (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.)  Plaintiff placed his left hand out of the window but drove away when the light turned green, and Troopers Eastburn and Wingate continued to pursue the vehicle.  (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.)

Thereafter, an unknown vehicle pulled alongside Plaintiff's vehicle with its hazard lights flashing.  (Supervisor Investigation [#60-2], at 11.)  Eventually Plaintiff's vehicle stopped at an intersection with Interstate Loop 410, and the unknown vehicle also stopped beside him.  (*Id.*; DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.)  Trooper

Wingate briefly spoke to the driver of the unknown vehicle, and vulgar language was shared between the two, before the unknown driver departed the scene. (Supervisor Investigation [#60-2], at 11.)

Troopers Christopher Rocha[2] and Ryan Bibby, other DPS Troopers on patrol that night, were also alerted to the pursuit of Plaintiff's vehicle. (DPS Incident Report [#60-4], at 3.) The patrolling DPS helicopter advised them that the registered owner of Plaintiff's vehicle had a warrant for Unauthorized Carrying of a Weapon. (*Id.*) Troopers Rocha and Bibby attempted to get ahead of the vehicle to deploy spikes and stop Plaintiff from fleeing any further, but then noticed other Troopers had stopped Plaintiff and were attempting to take him into custody, so put the spikes back in their box and ran towards the vehicle to assist. (*Id.*)

Troopers Eastburn and Wingate, as well as Troopers Rocha and Bibby, surrounded Plaintiff's vehicle with weapons drawn. (*Id.*; Use of Force Report [#60-2], at 2.) Trooper Eastburn made a passenger-side approach to the vehicle and discovered Plaintiff as the vehicle's sole occupant; Trooper Jason Norton[3] was at the driver-side window. (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.) The vehicle doors were locked, and Plaintiff refused to get out of the vehicle or put the vehicle's transmission into park. (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.) Trooper Eastburn moved to the driver-side window, and Trooper Bibby—after advising the other Troopers of his intent to do so—used his baton to strike the passenger-side window in order to gain access to the door lock. (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2; DPS Incident Report [#60-4], at 3.) Trooper Wingate then reached into the driver-side window and opened the door. (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-

---

[2] Trooper Rocha was not named as a Defendant in this case.
[3] Trooper Norton was not named as a Defendant in this case.

3], at 2.) Plaintiff still refused to exit the vehicle after numerous commands to do so, so Trooper Eastburn unbuckled Plaintiff and pulled him out of the vehicle, where he and Troopers Norton and Bibby placed him on the ground and in handcuffs. (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2; DPS Incident Report [#60-4], at 3.) Trooper Eastburn double locked the handcuffs and searched the driver for weapons; none were found. (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.)

During his detention, Plaintiff made several statements about having a microchip in his head and trying to draw attention to himself either by causing a chase or attacking a school. (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.) Footage from Trooper Bibby's bodycam recorded the DPS Troopers discussing their concerns that Plaintiff was either suffering from drug intoxication or from mental illness, as he exhibited signs of paranoia and a fear of retaliation due to the large amount of evidence he believed he had in his possession of various illegal activities. (Bodycam Video [#60-5].) The bodycam footage depicted Plaintiff as cooperative once he was handcuffed and the DPS Troopers conducting a thorough search of Plaintiff's vehicle. (*Id.*)

SAPD Officer Kendrick thereafter arrived on the scene and took custody of Plaintiff, as he was the officer originally initiating the pursuit. (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.) On the use-of-force report, Trooper Eastburn noted that there were no visible injuries to Plaintiff as a result of the incident. (DPS Use of Force Report [#60-2], at 3; DPS Vehicle Pursuit Report [#60-3], at 3.) Additionally, the footage from Trooper Bibby's bodycam does not depict any injuries to Plaintiff as a result of his detention; neither did it depict any use-of-force incidents after Plaintiff's initial detention. (Bodycam Video [#60-5].)

## IV. Analysis

Defendants' motion for summary judgment raises three issues to be resolved on the summary judgment record: (1) whether Plaintiff has overcome the Trooper Defendants' entitlement to qualified immunity as to Plaintiffs' Section 1983 claims arising under the First, Fourth, Eighth, and Fourteenth Amendments; (2) whether Plaintiff has proven a violation of a constitutional right entitling him to relief under Section 1983; and (3) whether Plaintiff's claims brought pursuant to the Texas Tort Claims Act are barred. The undersigned addresses each of these argument in turn.

**A.  Plaintiff has failed to overcome the Trooper Defendants' entitlement to qualified immunity on all of his claims arising under Section 1983.**

The undersigned has construed Plaintiff's pleadings as asserting the following constitutional claims against the Trooper Defendants in their individual capacity: (1) excessive force and unlawful search and seizure in violation of the Fourth Amendment; (2) deprivation of due process in violation of the Fourteenth Amendment; (3) cruel and unusual punishment in violation of the Fourteenth Amendment; and (4) restriction on free speech in violation of the First Amendment. The Trooper Defendants have asserted the defense of qualified immunity as to all of these claims.

**Qualified Immunity Standard.**  In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The first inquiry asks whether the facts show the officer's conduct violation a federal statutory or constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second inquiry is whether that the right in question was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Lower courts have

9

discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In the context of a qualified immunity analysis, the facts are construed in the light most favorable to the party asserting the injury. *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing *Saucier*, 533 U.S. at 201). A right is clearly established for purposes of the second step of the qualified-immunity analysis if it would be clear to a reasonable official, at the time of the challenged conduct, that his or her conduct violated the statutory or constitutional right at issue. *Saucier*, 533 U.S. at 206. Stated another way, a right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court has repeatedly admonished lower courts not to define clearly established law at a high level of generality. *See, e.g.*, *al-Kidd*, 563 U.S. at 742. Rather, the inquiry must be undertaken in light of the specific factual context of the case. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). The dispositive question is "whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742. However, there need not be a specific precedent on point that presents identical or even factually analogous circumstances for a defendant to be on notice that their conduct violates the Constitution. *Taylor v. Riojas*, --U.S.--, 141 S. Ct. 52, 53–54 (2020) (per curiam) (citing *Hope v. Peltzer*, 536 U.S. 730, 741 (2002) ("a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question")).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (internal quotation and citation omitted). "The

plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present absolute proof, but must offer more than mere allegations." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (internal quotations and citations omitted). Even viewing all the evidence in the light most favorable to Plaintiff, Plaintiff has failed to satisfy his burden to rebut the Trooper Defendants' assertion of qualified immunity as to each of Plaintiff's constitutional claims.

**Excessive Force.** To prevail on his claim of excessive force under the Fourth Amendment, Plaintiff must prove that he suffered an injury, which resulted directly and only from a use of force that was clearly excessive, and the excessiveness was clearly unreasonable. *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009). This Court judges the reasonableness of a use of force from the perspective of a reasonable officer on the scene of the incident, in light of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

There are no facts before the Court from which a factfinder could infer or conclude that Plaintiff suffered an injury as a result from the use of force on his vehicle or person. All of the DPS reports in evidence state that there was no injury to Plaintiff as a result of his detention and arrest or the forced entry into his vehicle. (DPS Use of Force Report [#60-2], at 3; DPS Vehicle Pursuit Report [#60-3], at 3.) These assertions are confirmed by the Trooper Bibby's bodycam video footage, which depicts Plaintiff being taken to the ground and handcuffed and then standing and conversing with the Troopers while his vehicle was searched without any

expression of physical pain or visible injuries.  (Bodycam Video [#60-5].)  The lack of any injury to Plaintiff is fatal to his Fourth Amendment excessive force claim.  *See Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999) (requiring injury underlying excessive force claim to be more than *de minimus*).

Furthermore, the undersigned agrees with the Trooper Defendants that their use of force to obtain Plaintiff's compliance was not unreasonable under the circumstances.  The summary judgment evidence establishes that Plaintiff ignored emergency lights and verbal commands to stop his vehicle and pull over or to exit the vehicle once stopped and that the officers were on notice of a pending weapons charge against Plaintiff.  The Fifth Circuit has held, in the context of much more forceful officer conduct, that it is not constitutionally unreasonable in light of clearly established law to take someone to the ground if the person is resisting arrest and there is a concern for officer safety.  *Griggs v. Brewer*, 841 F.3d 308, 313–14 (5th Cir. 2016).

Finally, as to the damage to Plaintiff's vehicle, Plaintiff has failed to raise a fact issue from which a reasonable factfinder could conclude that the damage was excessive or unnecessary so as to itself violate the Fourth Amendment.  *See United States v. Ramirez*, 523 U.S. 65, 71 (1998).  Plaintiff alleges that his window was broken for an unknown reason and that his cell phone was thrown to the ground during the stop.  (More Definite Statement [#7], at 5.)  The bodycam footage and DPS reports collectively refute this assertion, depicting the damage to property as limited to the crashed window to gain access to Plaintiff's vehicle.  (Bodycam Video [#60-5].)  There is no footage of any damage to Plaintiff's cell phone; rather, officers are depicted briefly handling Plaintiff's cell phone found in the passenger seat of the vehicle.  (*Id.*)

In summary, Plaintiff has failed to raise a genuine dispute of material fact as to his alleged excessive force claim and has failed to rebut the Trooper Defendants' qualified immunity as to this claim.

**Unreasonable Search and Seizure.** Plaintiff has also failed to raise a fact issue as to his unreasonable search and seizure claim. The summary judgment evidence demonstrates that the Trooper Defendants were responding to an ongoing vehicle pursuit, and, at the time of the stop, Plaintiff had repeatedly disregarded officer commands. (DPS Use of Force Report [#60-2], at 2; DPS Vehicle Pursuit Report [#60-3], at 2.) Additionally, the Trooper Defendants believed they were responding to an outstanding warrant on a charge of Unauthorized Carrying of a Weapon. (DPS Incident Report [#60-4], at 3.) Plaintiff has not rebutted Defendants' summary judgment evidence, which establishes that the traffic stop and subsequent search of Plaintiff's vehicle were reasonable.

Courts determine the reasonableness of an investigative stop by examining whether the stop was justified at its inception and whether the officer's actions were reasonably related in scope to the circumstances justifying the stop. *United States v. Rains*, 615 F.3d 589, 594 (5th Cir. 2010) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). There is no evidence from which a reasonable factfinder could conclude that the Trooper Defendants' actions in stopping, securing, and searching Plaintiff and his vehicle were unreasonable here. Plaintiff has therefore failed to raise a genuine dispute of material fact as to his alleged excessive force claim and has failed to rebut the Trooper Defendants' qualified immunity as to this claim.

**Due Process.** Plaintiff's claim that the officers violated his due process rights when they "failed to properly investigate" during the traffic stop. (More Definite Statement [#7], at 12.) The Trooper Defendants are also entitled to summary judgment on this claim. Insofar as

Plaintiff is attempting to assert a substantive due process violation based on the scope of the search and seizure of his vehicle and the force used during the traffic stop, his complaint must be brought under the Fourth Amendment. *See Graham*, 490 U.S. at 395 (Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). The Fourth Amendment specifically protects Plaintiff from unreasonable searches and seizures and excessive force, and his substantive due process claim must be dismissed.

To the extent Plaintiff is alleging a violation of procedural due process, this claim also fails, as "practically speaking, it cannot be that the analysis differs as between a Fourth Amendment violation and a procedural due process violation based on the same seizure." *Lowe v. Dallas Police Dep't*, No. 3:17-704-G-BN, 2017 WL 4863076, at *5 (N.D. Tex. Oct. 17, 2017). These claims fail as a matter of law, and Plaintiff has failed to rebut the Trooper Defendants' qualified immunity as to any alleged due process violation.

**Cruel and Unusual Punishment.** Plaintiff's allegations that the Trooper Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment must be construed under the Fourteenth Amendment, as he is not a convicted prisoner. *See Ingraham v. Wright*, 430 U.S. 651, 671–72 (1977); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). The summary judgment record does not provide any basis to conclude that the Trooper Defendants subjected Plaintiff to cruel and unusual punishment, and Plaintiff has not provided the Court with any factual basis for this claim. Plaintiff's More Definite Statement alleges that he was detained in the Bexar County Jail system after being arrested by SAPD Officer Kendrick, not the Trooper Defendants. (More Definite Statement [#7], at 7–8.) There are no facts before the Court

14

regarding any actions by the Trooper Defendants separate from the excessive force allegations already evaluated under the Fourth Amendment standard. This claim fails as a matter of law, and the Trooper Defendants are entitled to qualified immunity as to this claim.

**First Amendment.** Plaintiff claims he was engaged in a peaceful protest and assembly with 50 other individuals through a social media platform when he was stopped by the Trooper Defendants. (More Definite Statement, at 10.) Plaintiff alleges that he was prevented from protesting and continuing his free speech due to his arrest. These allegations are frivolous in light of the undisputed summary judgment record, which establishes that Plaintiff was stopped, detained, and ultimately arrested while driving alone at approximately 12:30 a.m. at a gas station along a major interstate. Plaintiff has not provided the Court with any competent summary judgment evidence that implicates the First Amendment, and there is nothing in the summary judgment record from which a factfinder could conclude that Plaintiff's First Amendment rights were infringed by the Trooper Defendants' actions. The Trooper Defendants are entitled to summary judgment on this claim.

**B.      Plaintiff's tort claims against DPS and the Trooper Defendants are barred by governmental immunity.**

Plaintiff asserts the tort claims of malicious prosecution, intentional infliction of emotional distress, and defamation and slander against DPS and the Trooper Defendants. Defendants argue these claims are barred because they do not fall under the Texas Tort Claims Act's limited waiver of immunity.

In Texas, a governmental unit, like the Texas Department of Public Safety, is immune from tort liability unless the Legislature has waived immunity. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998). This immunity from suit is jurisdictional in nature. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

The Texas Tort Claims Act addresses the waiver of governmental immunity for the State of Texas and its governmental units. *See* Tex. Civ. Prac. & Rem. Code §§ 101.001, *et seq.* As it pertains to this case, the Act provides:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (B) the employee would be personally liable to the claimant according to Texas law . . . .

*Id.* at § 101.021. Pursuant to the express terms of this limited waiver of immunity, DPS is not liable for a personal injury proximately caused by a negligent employee unless the injury "arises from the operation or use of a motor-driven vehicle or motor-driven equipment" by the employee. *Id.* No such allegations are at issue here.

Additionally, the Texas Tort Claims Act specifically exempts intentional tort claims such as false imprisonment or intentional infliction of emotional distress from the Act's limited waiver of immunity. *Id.* at §101.057. Accordingly, Plaintiff's tort claims against DPS (all of which are intentional torts) arising out of excessive force allegations during his detention and ultimate arrest are barred by the intentional tort exception to Texas's waiver of immunity.

The Tort Claims Act also has the effect of extending immunity to government employees. Subsection 101.106(f) of the Act states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee

>shall be dismissed unless the plaintiff files amended pleadings dismissing
>the employee and naming the governmental unit as defendant on or before
>the 30th day after the date the motion is filed.

*Id.* at § 101.106(f).  Thus, for subsection 101.106(f) to apply to a suit against a government employee in his individual capacity, two conditions must be met: (1) the conduct at issue must have been within the general scope of her employment; and (2) the suit could have been brought "under this chapter" against the governmental unit.  *Id.*  The Texas Supreme Court has construed the second condition to cover any claim "in tort and not under another statute that independently waives immunity."  *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011).  In light of this construction, an intentional tort claim "could have been brought" against a governmental unit under the Tort Claims Act even though the Act does not waive the unit's immunity for such claims.  *See id.* at 379–80.  Because the conduct at issue in this case falls within the scope of the Trooper Defendants' employment, they are also immune from suit under the Texas Tort Claims Act and are entitled to summary judgment on Plaintiff's tort claims.

## V.  Conclusion and Recommendation

Having considered Defendants' motion for summary judgment, the uncontested summary judgment record, and the governing law, the undersigned recommends that Defendants' Motion for Summary Judgment [#60] be **GRANTED** as to all remaining claims in this case.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is

modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 8th day of June, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE